UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRAD KENNETH SPAFFORD,<br><br>Defendant. | Criminal No. 2:24mj211 |

## ORDER

Pending before the Court is a Motion for Revocation of Release Order (the "Motion") filed by the Government. ECF No. 18. The Court has considered the memoranda of both parties and the previously established record and finds that a further hearing on this matter is not necessary.[1] For the following reasons, the Motion (ECF No. 18) is **GRANTED**.

**I.    BACKGROUND**

On December 10, 2024, a sealed criminal complaint was filed, charging Defendant Brad Kenneth Spafford with a violation of the National Firearms Act, 26

---

[1] The Court has discretion over whether to hold an evidentiary hearing when reviewing a magistrate judge's order regarding detention. *See United States v. Williams*, 753 F.2d 329, 333–34 (4th Cir. 1985); *see also United States v. Bryant*, No. 3:20cr49, 2020 WL 5163286, at *5 (E.D. Va. Aug. 31, 2020) (concluding that a hearing was not necessary to review the magistrate judge's detention order). Having considered the pretrial services bond report (ECF No. 14), the memoranda of both parties (ECF Nos. 18, 21), the transcript of the detention hearing (ECF No. 22), and the exhibits introduced at that hearing (ECF Nos. 17-1 to 17-9), the Court finds it does not need additional evidentiary material or oral argument in service of its *de novo* review. Accordingly, the Court will rule on the Government's motion without a hearing. *See also* E.D. Va. Local Crim. R. 47(J).

U.S.C. § 5861(d), for possessing an unregistered short-barrel rifle. Crim. Compl., ECF No. 3; Aff., ECF No. 4. In addition to the possession of the short-barrel rifle, the affidavit stated that the Government had information indicating that Mr. Spafford was stockpiling homemade weapons and ammunition and had disfigured his hand while working with a homemade explosive device. Aff. at 2, ECF No. 4.

An arrest warrant was issued for Mr. Spafford on December 10, 2024. ECF No. 5. On December 17, 2024, Mr. Spafford was arrested at his property in Smithfield, Virginia, in Isle of Wight County. Warrant Return, ECF No. 13; Gov't Mot. Revoke at 5–6, ECF No. 18. Mr. Spafford had an initial appearance before Judge Krask on December 18, 2024. Min. Entry, ECF No. 8. A temporary detention order was issued, ECF No. 11, and a detention hearing was set for December 23, 2024. On December 23, 2024, a hearing was held before Judge Miller where Mr. Spafford waived an immediate detention hearing and requested that the detention hearing be set along with the preliminary hearing on December 30, 2024. Min. Entry, ECF No. 15.

Also on December 23, 2024, pretrial services submitted a sealed bond report. The report—which notably did *not* take into account the evidence later provided by the Government at the detention hearing—recommended release on personal recognizance, noting that Mr. Spafford had ties to the district (having grown up in Virginia and lived here almost all of his life), stable family and employment, and no criminal record. Sealed Bond Report, ECF No. 14.

On December 30, 2024, a combined preliminary hearing and detention hearing was held before Judge Leonard. Min. Entry, ECF No. 17; Tr., ECF No. 22. At that

2

hearing, the Government presented strong evidence that Mr. Spafford had illegally possessed an unregistered short-barrel rifle. Tr. at 12–15, ECF No. 22. In addition, the Government presented extensive additional evidence related to execution of the search warrant on Mr. Spafford's property, which resulted in seizure of "more than 150 homemade improvised explosive devices, assessed as pipe bombs." Mot. at 1, ECF No. 18; *see* Tr. at 16–25, ECF No. 22; *see also* Gov't Exs., ECF Nos. 17-1 to 17-7. The Government noted that "the preliminary assessment of the FBI explosive's lab in Quantico was that this is the largest seizure of finished explosive devices by number in FBI history." Tr. at 53, ECF No. 22. Among other things, the Government also adduced evidence that several of the devices were stored in a backpack in the main bedroom that was marked "nolivesmatter," *id.* at 22; that a highly unstable primary explosive called HMTD was stored in a jar in a freezer alongside Hot Pockets and corn on the cob, *id.* at 20–21; that a handwritten journal was found detailing apparent recipes for explosives (including "homemade C4") and inventories of devices and materials, *id.* at 23–24; that both Mr. Spafford and his wife, when asked directly, had failed to mention the presence of any of the explosive devices on the property other than the HMTD in the freezer, *id.* at 13–14; and that Mr. Spafford had previously lost part of his hand due to a homemade explosive, *id.* at 5.

Judge Leonard found probable cause to support the charged crime. *Id.* However, despite the evidence related to the homemade destructive devices, Judge Leonard denied the Government's motion for detention, finding that a bond along with a third-party custodian (Mr. Spafford's mother) and special conditions including home

3

detention with location monitoring were sufficient to ensure Mr. Spafford's attendance and protect the public. *Id.* Judge Leonard noted the Government's intent to appeal the denial of detention and that the issuance of bond would be stayed pending that appeal. *Id.*

Later that same day, December 30, 2024, the Government filed the instant Motion. Mot., ECF No. 18. The Motion attaches the Government's exhibits submitted at the detention hearing. *See* ECF Nos. 18-1 to 18-7. The Government also filed a separate motion to stay the order of release. Mot. Stay, ECF No. 19. Judge Leonard granted the motion to stay and stayed the order of release until the instant Motion was acted on by this Court. Order, ECF No. 20. On December 31, 2024, Mr. Spafford filed a Response to the Motion, arguing that the release order should be maintained. Resp., ECF No. 21. The Government did not file a reply.[2] On January 3, 2025, the transcript from the detention hearing was filed. Tr., ECF No. 22. The Government's Motion is ripe for *de novo* adjudication.

## II.   LEGAL STANDARD

The Government seeks review of the magistrate judge's release order pursuant to 18 U.S.C. § 3145(a), which states that "[i]f a person is ordered released by a

---

[2] After this Order was prepared, but before it was docketed, the Government filed a Supplemental Motion for Revocation of Release Order. ECF No. 23. The Supplemental Motion is "substantially similar to th[e] initial filing, with some new information, citations and quotations from the transcript of the detention hearing, and a response to the arguments in the defendant's responsive filing." *Id.* at 2 (citations omitted). The Court has reviewed the Supplemental Motion, and to the extent it differs from the initial Motion, it only strengthens the conclusions and findings previously reached by the Court and expressed in this Order.

4

magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." Although the statute does not specifically state the standard of review, courts have held that the district court reviews the magistrate judge's order *de novo*. *United States v. Mallory*, 268 F. Supp. 3d 854, 861 (E.D. Va. 2017) (citing *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989)); *see also United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (district courts "must make an independent determination of the proper pretrial detention or conditions of release").

Although Mr. Spafford correctly points out that "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception," Resp. at 2, ECF No. 21 (quoting *United States v. Salerno*, 481 U.S., 739, 755 (1987)), the Bail Reform Act nevertheless provides that the Court *shall* order a defendant detained if the Government demonstrates that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). When the basis for detention is a risk of flight, the Government must prove its case by a preponderance of the evidence. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam). When detention is based on the inability to reasonably assure the safety of any other person and the community, the Government must prove dangerousness by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). The Government need only establish one basis for detention.

Under 18 U.S.C. § 3142(g), the Court must consider four factors in making its determination:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including: the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)–(4).

### III.  ANALYSIS

In this case, the Government asks this Court to reverse Judge Leonard's decision to release Defendant on a bond pending trial because Defendant "poses an extreme danger to the community, which cannot be sufficiently mitigated by bond conditions." Mot. at 1, ECF No. 18. Defendant argues to the contrary that Judge Leonard's decision correctly "considered the [§ 3142(g)] factors and determined that conditions could be imposed that would ensure that Mr. Spafford would attend court as required and would not constitute a danger to the community." Resp. at 2, ECF No. 21. The Court now proceeds to its *de novo* review of the factors set forth in 18 U.S.C § 3142(g):

*1.     Nature of the Offense*

The nature of the offense currently charged is serious as evidenced by the maximum punishment of 10 years incarceration. 26 U.S.C. § 5871. Indeed, the Bail Reform Act specifically instructs the Court to consider whether the charged offense involved a firearm, indicating the seriousness with which Congress took such crimes. 18 U.S.C. § 3142(g)(1). Notably, the statute also instructs the Court to consider whether the offense involved a "destructive device." *Id.* While the precise offense currently charged does not do so, the presence of destructive devices obviously weighs heavily here, as discussed below in relation to danger to the community.

*2.     Weight of the Evidence*

The evidence here appears to be quite strong. The charged crime is not a complicated one. The defendant must knowingly possess a short-barrel rifle that is operational and unregistered. *See* 26 U.S.C. § 5861(d) (making it a crime to "to receive or possess a firearm which is not registered to [defendant] in the National Firearms Registration and Transfer Record"); 28 U.S.C. § 5845(a) (defining "firearm" to include "a rifle having a barrel or barrels of less than 16 inches in length"); *see generally United States v. Tovar*, 719 F.3d 376, 389 (5th Cir. 2013) (listing elements of a 5861(d) offense).

Here, the rifle in question has a barrel well short of 16 inches, whether or not the threaded extension is considered. Tr. at 15, ECF No. 22, Gov't Ex. 2, ECF No. 17-2 (showing barrel of approximately 13 inches, including extension). The rifle was found on Defendant's property; he had previously sent a picture of it to the

Government's source; and he admitted in statements to Government agents that he possessed it. Tr. at 13, ECF No. 22. There appears to be no dispute that the firearm is operational. And it was not registered. *Id.* at 9, 12. In addition, although it is not necessary that Mr. Spafford knew about the requirement for registration (as long as he knew the characteristics of the weapon itself), the Government has evidence that Mr. Spafford *did* know that his weapon required registration and that he expressly stated that he did not "believe in" such registration. Tr. at 10, ECF No. 22. In sum, the Court finds the weight of the evidence to be very strong based on the Government's evidence and proffer at the hearing.

  3.   *History and Characteristics of the Person*

The Government acknowledges that "the defendant lacks any criminal history and has long-standing ties to the community, steady employment, and substantial resources," and that this "generally weighs in the defendant's favor, particularly regarding any risk of flight." Mot. at 7, ECF No. 18. The Court agrees that the conventional factors of criminal history, ties to the community, and family/employment stability superficially support release.

However, other elements of Mr. Spafford's history and characteristics are also relevant. For example, the defense has not disputed that Mr. Spafford lost three fingers on his right hand in 2021 through an accident involving homemade explosives. *See* Gov't Ex. 7 (Aff.) at 2, ECF No. 17-7. Starting in 2023, the Government's source reported that Mr. Spafford was stockpiling weapons and ammunition and that he and his friends were planning for something that Mr. Spafford could not do alone. *Id.* The

8

source further reported that Mr. Spafford was training for a sniper certification at a shooting range; that he was using pictures of the President as targets; that he stated that political assassinations should be brought back; that he sent a text message in 2024 after the attempted assassination of then-candidate Trump stating "I don't miss Kamala"; that he stated his belief that the Government was taking children away and turning them into school shooters; and that he shared memes on social media indicating a need to take violent action.[3] Tr. at 8–9, ECF No. 22; Gov't Ex. 1, ECF No. 17-1 (memes).

Moreover, the Court is concerned with numerous aspects of Defendant's history regarding this investigation and the results of the search on his property. First, it appears to the Court that Mr. Spafford lied to investigators when they asked whether they would find any explosive or destructive devices at his property, thereby potentially exposing the investigators to serious danger. He also stored an unstable explosive next to food items in a freezer in an outbuilding, numerous homemade explosive devices in the same outbuilding, and homemade explosive devices in an unsecured backpack in the actual residence, in a home where two young children were present. In addition to demonstrating danger to the broader community as discussed below, these actions demonstrate dishonesty and extreme recklessness even with regard to the safety of others in his own family. In addition, the presence of destructive

---

[3] While none of these actions likely amounts to criminal action, and some or all of the opinions expressed may be protected by the First Amendment, *see* Resp. at 3, ECF No. 21, this does not mean that the Court may not take note of Defendant's endorsement of political violence as part of his history and characteristics.

devices in a backpack marked with the nihilistic slogan "nolivesmatter" is seriously concerning to the Court with regard to the characteristics and judgment of the Defendant.

### 4. Danger to the Community

The final and most impactful factor to be considered in this case is "[t]he nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As has been previewed above, the Court has extreme concerns about the potential danger posed by Mr. Spafford upon release, regardless of the conditions imposed. Mr. Spafford has specifically stated that he does not believe in Government regulation when it comes to firearms, and he intentionally flouted the requirements for registration of short-barrel rifles. The Court is not confident that Mr. Spafford would be any more respectful of the imposed conditions of release.

In addition, the Court relies on the following evidence in making its determination regarding danger to other persons or the community:

- The Government's confidential human source ("CHS") was Defendant's neighbor and friend who has approximately 20 years' experience in law enforcement. Tr. at 6, ECF No. 22;
- The CHS reported that the Defendant was training for sniper qualifications at a firing range and using pictures of the President for target practice while also stating his belief that "we" need to bring back political assassinations and that

10

the missing children were being taken by the Government to be converted into school shooters. *Id.* at 7–8;

- Defendant shared social media memes with the CHS expressing support for violence. *Id.* at 8; Gov't Ex. 1, ECF No. 17-1 (memes stating "Peace is not always an option" and "Tread on those who tread on you");

- Shortly after the attempted assassination of then-candidate Donald Trump, Defendant made a statement along the lines of "Bro . . . I don't miss Kamala." This statement was made around the time Defendant was working on sniper certification. Tr. at 9, ECF No. 22;

- In the fall of 2024, Defendant moved into a newly purchased 20-acre farm. The CHS visited while wearing a recording device and was given a tour of the property. During that visit, the Defendant discussed his plans to fortify the property by installing a "50-cal turret" that would provide a 360-degree view of the property with a 50-caliber weapon. He further discussed how he could disable a vehicle in his driveway to stop anyone entering his property except on foot. *Id.* at 10;

- Defendant also discussed his unregistered short-barrel rifle with the CHS, noting that he did not believe in registering firearms. *Id.*;

- Defendant discussed explosives with the CHS, including HMTD and ETN. He and his wife specifically discussed HTMD that was stored in a freezer in a jar marked "dangerous" and "do not touch." *Id.* at 10–11;

11

- After his arrest and before the search of his property, the Defendant was interviewed and lied about having any explosive materials at the property other than the HMTD in the freezer despite being asked numerous times. He also stated during a call with his wife that he would be going away for a lengthy period of time. Defendant's wife also lied about the presence of explosives on the property despite being on a recording discussing the presence of the HTMD in the freezer. *Id.* at 13–14, 51.
- Law enforcement subsequently recovered approximately 150 devices assessed as homemade pipe bombs from the property, some of which were hand-labeled as "lethal." Materials and tools indicative of the manufacture of such devices were also found, including powders, fuses, and BBs, as well as at least one partially made device. A device assessed as an "improvised Claymore" was also discovered. *Id.* at 16–19; Gov't Ex. 3, ECF No. 17-3.
- In a freezer in a garage, next to food items, agents found a jar marked "dangerous, do not touch." The jar matched the description of the jar of HMTD previously reported by the CHS. Tr. at 19–20, ECF No. 22; Gov't Ex. 4, ECF No. 17-4;
- Most of the apparent destructive devices were x-rayed and detonated on site, while several were sent to a lab for testing. At least one of the devices has been examined in the lab and determined to be consistent with an explosive device containing projectiles that could cause property and/or loss of life. Tr. at 21;

- While most of the devices were found in a garage (where food items were also kept in a freezer), six devices were found unsecured in a backpack in the master bedroom of the main residence (a residence where young children live). The backpack was marked with a patch showing an apparent hand grenade and the phrase "#nolivesmatter." *Id.* at 22; Gov't Ex. 6, ECF No. 17-6;

- Agents also discovered a journal containing what appeared to be recipes for explosives and inventories of devices, powders, and elements. The materials in the journal correlated with the assessed explosive devices discovered at the scene (for example, a color-coded chart in the journal lists a "stinger" grenade as tan, and agents recovered tan devices labeled "stinger"). Tr. at 22–25, ECF No. 22; Gov't Ex. 5, ECF No. 17-5;

Some of these facts, and the others previously discussed—primarily the evidence of the possession and manufacture of homemade explosive devices—are inherently disturbing. Others, viewed in isolation, may not be as disturbing or overwhelming; some even represent protected opinions or legal activity. But when all of the facts currently available are viewed *in combination*, the Court finds them alarming.

Indeed, the Court finds that Mr. Spafford has shown the capacity for extreme danger. While the defense has asserted that Mr. Spafford has never used or threatened to use an explosive device, *see* Resp. at 2, ECF No. 21, the evidence is very strong that he in fact manufactured and possessed the explosive devices in question here. Moreover, while the defense questions whether Mr. Spafford had "the means or equipment necessary to explode the devices," *id.* at 3, something exploded violently enough

13

to remove several of his fingers, and many of the devices were marked as "lethal." *See United States v. O'Neill*, 144 F. Supp. 3d 428, 437 (W.D.N.Y. 2015) ("Defendant's own injury [from an explosion involving homemade explosives] demonstrates the dangerous nature of his activities."), *aff'd* (2d Cir. Feb. 19, 2016); *see also United States v. Dodge*, 846 F. Supp. 181, 184 (D. Conn. 1994) (noting that a pipe bomb is an inherently dangerous weapon "for which no peaceful purpose can be seriously suggested").

Nor is this a situation where the Defendant manufactured or possessed only one or two devices. Mr. Spafford was in possession of approximately *one hundred and fifty* devices, potentially the largest seizure in the history of the FBI by number. Tr. at 53, ECF No. 22. The degree of danger that these devices presented to his own family and to the community at large is extreme and the sheer scale of the enterprise indicates the Defendant's commitment to creating that risk. The Court has not found a comparable case in terms of scale, but even cases involving smaller numbers of destructive devices and other factors that were positive for the defendant have resulted in detention. *See O'Neill*, 144 F. Supp. 3d at 437–38 (finding that no conditions could guarantee safety of other persons and the community in case involving six destructive devices discovered after accidental explosion where defendant had minimal criminal history and argued that devices were for exploding tree stumps); *United States v. Viefhaus*, 113 F.3d 1247 (10th Cir. 1997) (affirming order of detention where defendant possessed components of a pipe bomb, despite lack of criminal history).

The defense argues that the Government had Mr. Spafford under some level of investigation for almost two years before acting, and that this shows that he cannot

14

be as serious a danger to the community as the Government claims. *See* Tr. at 59, ECF No. 22; Resp. at 2, ECF No. 21. However, the Government presumably did not know about the full extent of Defendant's activities until it executed the search warrant, and the Court does not find that the fact that Mr. Spafford did not cause specific harm during the period of the investigation outweighs the inherent dangerousness demonstrated by his activities. Nothing in the Bail Reform Act requires that the Court wait until Defendant actually blows someone or something up (besides his own hand), if the Court concludes that it cannot reasonably assure the safety of the community through conditions of release.

Accordingly, for the reasons discussed above, the Court makes a finding of fact that the Government has shown by clear and convincing evidence that Mr. Spafford's extensive activities involving explosives and destructive devices, combined with his history and characteristics, are inherently dangerous, that no third-party custodian or monitoring can keep sufficient watch on him at all times, and that his release on any conditions would create a danger to other persons and the community. Therefore, the Court will order his detention.

## IV.   CONCLUSION

For the reasons stated, it is hereby **ORDERED** that:

1. The Government's Motion (ECF No. 18) is **GRANTED**, and the Government's Supplemental Motion (ECF No. 23) is therefore **DISMISSED as moot**;

2. The previously entered order of December 30, 2024 (ECF No. 17) is **VACATED** insofar as it ordered Defendant's release;

3. The Defendant shall be detained pending trial in this matter;

4. The Defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

5. The Defendant shall be afforded reasonable opportunity for private consultation with counsel; and

6. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

The Clerk is **DIRECTED** to send copies of this Order to United States Magistrate Judge Lawrence R. Leonard, counsel of record, the United States Probation Office, and the United States Marshals Service.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

January 7, 2025
Norfolk, Virginia